EDWARD GREENSTEIN *vs.* HERMAN K. KALMANOVITZ

First Judicial District, Hartford, March Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

A lease for five years from February 1st, 1917, with an option for an additional term of five years at a yearly rental of $840, provided that if the city in which the premises were located "should go no license" then during the time the city "is no license" the rent should be one half the above sum; and that such stipulation should apply to the original and optional lease. The lessee exercised his option and the sole question was as to the rental for the optional term. *Held* that the parties were obviously concerned with the situation which might exist in the future respecting the sale of liquor in the city in its bearing upon the rental value of the leased premises, and not with the manner or method whereby such sales might be allowed or prohibited; and therefore inasmuch as the city had become "no license" by virtue of the adoption of the Eighteenth Amendment and the passage of the so-called Volstead Act—as well as by our own statute repealing all laws authorizing the granting of liquor licenses (Public Acts of 1921, Chap. 291)— as effectually as if the city itself had voted or "gone" no license, it would violate the manifest intent of the contract to hold that the rent should not be reduced.

Argued March 6th—decided April 4th, 1923.

SUIT to enforce a lease for an additional term of five years, pursuant to a provision in the original instrument, brought to and tried by the Superior Court in Hartford County, *Brown, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendants. *No error.*

*Mortimer H. Camp,* for the appellants (defendants).

*William E. Egan,* for the appellee (plaintiff).

BEACH, J. By stipulation set forth in the record, the parties agreed on the facts upon which the cause

was submitted to the Superior Court for judgment. When the action was brought, in January, 1922, the plaintiff was in possession of the leased premises under a lease from the defendants for the term of five years from February 1st, 1917, with an option for an additional term of five years, at a yearly rental of $840, payable in equal monthly payments of $70, if the plaintiff should exercise his option and claim a lease for the additional term. The original lease also contained the following provision, which gives rise to the sole question upon which the parties were at issue in the Superior Court: "It is understood and agreed by and between said parties that in the event that the City of New Britain should go no license that during such time that the said City of New Britain is no license the rent shall be one-half of the amount hereinbefore specified. This stipulation is to apply to the lease and the optional lease of five years."

It is admitted that the plaintiff has exercised his option, and is entitled to another lease for the additional term of five years from February 1st, 1922.

It is also admitted that the last vote on the question of license or no license taken in the city of New Britain was in favor of license. The only point on which the parties differed and asked the judgment of the Superior Court, was what rent the plaintiff should pay during the additional term, in view of the present state of the law and of the above quoted provision.

The defendants' claim is that the phrase "in the event that the City of New Britain should go no license," expresses a condition precedent, that the word "go" means "vote," and hence there can be no reduction in the rent because New Britain has not voted no license. We think it strains the written words to so limit the phrase and then convert it into a condition precedent to the reduction of rent. Looking at the in-

strument from a grammatical and literal point of view, the words "go no license" are fairly capable of being understood as meaning "become no license." The question is whether the parties were contracting as to rental value with reference to the fact of no license, or with reference to the particular manner in which they supposed it might come to pass.

Still looking at the form of the stipulation, that question is answered—so far as form alone can answer it— by the fact that the operative words, "the rent shall be one-half," are grammatically connected directly with the condition of New Britain being no license, and not with the condition of its going, or voting, no license. Hence we cannot by a process of construction create a condition precedent which will put on their agreement that the rent shall be reduced during such time as the city of New Britain is no license a limitation which the parties have not expressed in words. They may not, in 1917, have contemplated any other way in which retail liquor traffic in New Britain could be prohibited by law than by a local option vote, but the fact that they conditioned the reduction of rental on the existence of such prohibition for the time being indicates—what was doubtless true in fact—that they were, as we said in *Goldberg* v. *Callender Brothers, Inc.*, 96 Conn. 182, 188, 113 Atl. 170, "concerned with the consequences rather than with the form of the prohibition."

We cannot tell from the record whether the premises were ever used, or intended to be used, as a place for the sale of intoxicating liquor, although such use was contemplated because not forbidden. It is, however, apparent that the stipulation in question was based on the assumption that the leasehold was more valuable in times of license than in times of no license, and that was doubtless the reason why the contract provides in terms that "during such time that the City of New

Britain is no license the rent shall be one-half of the amount hereinbefore specified." There can be no doubt that the city of New Britain is no license. None can be granted there. Not only because of the Volstead Act, which is a domestic statute, but also because of our own Chapter 291 of the Public Acts of 1921, effective July 1st, 1921, which, among other things, expressly repeals all the sections of the General Statutes authorizing the county commissioners to grant licenses for the sale of intoxicating liquors. The leasehold is thereby diminished in value as effectually as if New Britain had "gone" no license by vote. That being so, it would violate the manifest intent of the contract to hold that the rent should not be reduced, and there is nothing in the contract which requires us to so hold.

There is no error.

In this opinion the other judges concurred.