**Herschel MACY, Plaintiff-Respondent,**

v.

**Bonnie DAY, Defendant-Appellant.**

No. 7886.

Springfield Court of Appeals.

Missouri.

May 10, 1961.

Graves & Graves, Neosho, for defendant-appellant.

Douglas & Douglas, Neosho, for plaintiff-respondent.

STONE, Presiding Judge.

In this action at law, plaintiff sought to recover $500, the amount of a down payment to defendant on the purchase price of a restaurant known as Vo's Cafe, the fixtures, equipment and (perhaps) supplies therein, and the building in which the restaurant operated in Neosho, Missouri. In her counterclaim, defendant sought $500 for plaintiff's breach of the alleged sale contract. Upon trial to the court sitting as a jury, plaintiff had judgment on his petition for $500 with interest and defendant was denied recovery on her counter-claim. On this appeal, defendant's only contention is that the judgment "was clearly against the law and the weight of evidence."

At the conclusion of negotiations (in which defendant's attorney participated) in the restaurant on the evening of July 16, 1959, the parties apparently believed that they had reached an understanding for what admittedly was to have been "a package deal" for the real estate and the restaurant. So believing, plaintiff delivered to defendant his check for $500 bearing this notation, "payment on Vo's bldg & equipment & stock as of Aug 1 59," and defendant delivered to plaintiff a receipt (written on the face of a blank check) reading as follows: "Recd 500.00 as down payment on Vo's restaurant, equipment & stock as of Aug 1 1959. Balance for building restaurant & est to be $12,500. Payment & delivery to (be) completed Aug 1 59. In event title is not good no sale. Mrs. Bonnie A. Day." Plaintiff said that he "was supposed to have a (written) contract the next morning"; and we emphasize that, from the transcript before us, it is abundantly clear that neither party intended that all of the constituent terms of their agreement were to be included in plaintiff's check and defendant's receipt therefor or that those writings should be the only evidence of their understanding. Contrast Ray v. Wooster, Mo., 270 S.W.2d 743, 752–753. However, it was several days after July 16 before a written contract was prepared by defendant's attorney; and, when that contract was presented to plaintiff, he objected to some provisions and refused to sign. The trial judge found that there was no binding agreement because there was (1) no description of the real estate and (2) no meeting of the minds with reference to the restaurant fixtures, equipment and stock involved in the transaction. We treat of these findings in inverse order.

Although the parties seemingly contemplated the sale of "equipment & stock," their testimony upon trial indicated certain

areas of misunderstanding. As for the equipment, plaintiff said that he thought (on the evening of July 16, 1959) that he was buying "all the equipment in the restaurant"—"everything in there belonged to me"; and defendant's testimony plainly shows that plaintiff was justified in that conclusion. But, while plaintiff was talking with defendant in the restaurant two or three days later, "the coffee man come in and said, 'Macy, these three (coffee) stoves here belong to my company.'" In her testimony, defendant referred at one point to "two little coffee stoves" and, at another point, to "a coffee stove," so we do not know how many "coffee stoves" were in the restaurant nor (in the absence of any proffered evidence on these subjects) their make, model, size or reasonable market value. However, regardless of these details, defendant readily conceded upon trial that the "coffee stoves" were owned and furnished by her coffee supplier at Webb City and that she simply "had forgotten to tell him (plaintiff)" about that on the evening of July 16.

The written contract presented to plaintiff several days after July 16 also excepted from the personalty to be transferred "the television which is the personal property of first party (defendant)." Plaintiff immediately objected and, for this (and other) reasons, refused to execute the contract. When, in the course of plaintiff's cross-examination during trial, defendant's attorney suggested that he had "marked that out" of the contract in response to plaintiff's objection, plaintiff insisted "I didn't see it taken out"; and, in the form of contract received in evidence as the one tendered to plaintiff, the clause excepting the television had not been deleted. The testimony of defendant concerning this television set is not satisfying. When asked why it was reserved to her in the written contract, she said "that was Charlie's (her deceased husband's) personal television"; and, when pressed for further answer, she stated that "I didn't know the television was taken out"

in the written contract and thought that her attorney "didn't even know the television was included * * * because the television is there (in the restaurant) sometimes and sometimes it isn't." On one page of the transcript we find defendant's testimony that "the television was there when (plaintiff) was there, so that is the reason I included it" and "gave him the television," while on the next page of the transcript we find defendant's contradictory statement that "at the time when (plaintiff) was in there, I don't think the television set was in there," followed by this meaningless linguistic jumble, "if the television was in there and I told him he could have the television, he could have it, but I didn't know that the television wasn't included on it, it says on the contract that the t.v. wasn't to go."

Turning to the "stock" or supplies, plaintiff thought that "the inventory wasn't to be increased or wasn't to be depleted, it was supposed to be just as it was, or fairly close to what it was this night" of July 16. According to plaintiff, defendant told him two or three days later that "I (defendant) am not going to give you any of the inventory * * * I'd be crazy to give you an inventory" and refused plaintiff's counter-proposal that he "would give her $500 less and buy her inventory." In the written contract subsequently presented to and rejected by plaintiff, it was provided "that all store supplies, provisions on hand by said first party (defendant) at the close of operation on said 31st day of July 1959 shall be turned over to second party (plaintiff) and that payment therefor shall be included in the purchase price (of $13,000) above mentioned" and (as interlined by hand) "that no supplies will be removed except as used in daily business." At the trial, defendant's labored explanation was that "he (plaintiff) was to have the inventory as I had it then (on July 16) and as I was going to keep it up like we always keep it up, everything from the next day that I had to buy was on hand, everything I had to

buy from any time until he took over, what I had to have I still had on hand, just like I do right now." Obviously, whatever "understanding" the parties may have approached as to "stock" must have been indeed vague, nebulous and fuzzy.

It is elementary and fundamental that, to make a valid contract, "(t)he parties must have a distinct intention, common to both, and without doubt or difference" [Dobbins v. City Bond & Mortgage Co., 343 Mo. 1001, 1012, 124 S.W.2d 1111, 1116(8); Bennett v. Tower Grove Bank and Trust Co., Mo.App., 325 S.W.2d 42, 47; 17 C.J.S. Contracts § 31, p. 359], and that the minds of the contracting parties must meet upon and assent to the same thing in the same sense and at the same time. Bearup v. Equitable Life Assur. Soc. of U. S., 351 Mo. 326, 330, 172 S.W.2d 942, 945; Huttig v. Brennan, 328 Mo. 471, 491, 41 S.W.2d 1054, 1062(8); State ex rel. Equitable Life Assur. Soc. of U. S. v. Robertson, Mo., 191 S.W. 989, 991; Green v. Cole, 103 Mo. 70, 76, 15 S.W. 317, 318; Shofler v. Jordan, Mo.App., 284 S.W.2d 612, 614(3); Luckey v. St. Louis & S. F. R. Co., 133 Mo.App. 589, 593, 113 S.W. 703, 704(2). " 'Until all understand alike, there can be no assent, and, therefore, no contract.' " Tessler v. Duzer, Mo.App., 309 S.W.2d 1, 3; 17 C.J.S. Contracts § 31, p. 359. And, the meeting of the minds essential to a contract may not be found on the undisclosed assumption or secret surmise of either party but must be gathered from the intention of the parties as expressed or manifested by their words or acts. Shofler v. Jordan, supra, 284 S.W.2d loc. cit. 615(5); McClintock v. Skelly Oil Co., 232 Mo.App. 1204, 1217(4), 114 S.W.2d 181, 189(7); Seavy & Flarsheim Brokerage Co. v. Monarch Peanut Co., Mo.App., 241 S.W. 643, 644(1); Brewington v. Mesker, 51 Mo.App. 348, 356(2).

The instant record reflects sharp disagreement between the parties, *prior to institution of suit,* as to whether certain items of personalty were included in those to be transferred to plaintiff in the contemplated "package deal." Whether the minds of plaintiff and defendant met upon and assented to the same thing in the same sense and at the same time was upon conflicting evidence an issue for determination by the trial judge, sitting as the trier of the facts. McDonald v. Lynch, 59 Mo. 350. Although, in a court-tried case, it is our duty to "review the case upon both the law and the evidence as in suits of an equitable nature," we are directed to accord due regard to the opportunity of the trial court to judge of the credibility of the witnesses and we are enjoined from setting aside the judgment unless it is clearly erroneous. Rule 73.01(d), V.A.M.R.; V.A.M.S. § 510.310(4); Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 783(1); Lubrication Engineers, Inc. v. Parkinson, Mo.App., 341 S.W.2d 876, 877(3). Independent examination and review of the instant record, with appropriate respect for the stated principles, do not permit us to disagree with the finding nisi that there was no meeting of the minds with reference to the restaurant fixtures, equipment and stock and that, therefore, there was no valid contract. With plaintiff's $500 down payment thus having been made under the mistaken belief of both parties that they had reached an agreement, and with no showing of fraud or fault on the part of plaintiff, he had a right to recover back, in this action for money had and received, the money which he had paid to defendant. McDonald v. Lynch, supra, 59 Mo. loc. cit. 351; Seifert v. Union Brass & Metal Mfg. Co., 191 Minn. 362, 254 N.W. 273(1); Schaeffer v. Miller, 41 Mont. 417, 109 P. 970, 971(1); Obear-Nester Glass Co. v. Lax & Shaw, 8 Cir., 11 F.2d 240, 244(9); Restatement of Law of Restitution, § 15, p. 61; 4 Am. Jur., Assumpsit, § 27, loc. cit. 518; Id., § 24, p. 514; 40 Am.Jur., Payment, § 215, p. 862; 58 C.J.S. Money Received § 6a, loc. cit. 917.

■ Since the foregoing is dispositive of the appeal, we should not gratuitously reach for and needlessly rule other questions. State ex rel. Sho-Me Power Corp. v. Hawkins, Mo.App., 337 S.W.2d 441, 444. However, in view of the fact that the briefs are addressed *solely* to the sufficiency of plaintiff's $500 check and defendant's receipt therefor (exchanged on the evening of July 16) to satisfy the statute of frauds [V.A.M.S. § 432.010], we add these brief comments. As instant defendant points out, the note or memorandum required by the statute of frauds need not be contained in a single writing, but two or more writings, *properly or sufficiently connected,* may be considered together. Logan v. Waddle, 315 Mo. 980, 985, 287 S.W. 624, 625; Wheeler v. Blanton, Mo.App., 253 S.W.2d 497, 499(1); 37 C.J.S. Frauds, Statute of § 177, p. 656. And, the collective sufficiency of such writings to satisfy the statute depends upon whether they state the contract with such reasonable certainty that its essential terms can be ascertained from the writings without resort to parol evidence [Meramec Portland Cement & Material Co. v. Kreis, 261 Mo. 160, 169, 168 S.W. 1148, 1150; Midland Realty Co. v. Manzella, Mo.App., 308 S.W.2d 326, 330; Polk v. Mitchell, 225 Mo.App. 145, 150, 15 S.W.2d 961, 963], those essential terms being (1) the parties, (2) the subject matter, and (3) the consideration or price. Kelly v. Thuey, 143 Mo. 422, 435, 45 S.W. 300, 303; Byers v. Zuspan, 241 Mo.App. 1103, 1111, 264 S.W.2d 944, 949; Peycke v. Ahrens, 98 Mo. App. 456, 460, 72 S.W. 151, 152. It is true also that, as instant defendant urges, a contract for the sale of real estate is, under the statute of frauds, sufficient as to the second element, i. e., the subject matter, if it clearly reveals the intent of the parties with reference to the particular tract sold and furnishes the means of, and provides the "key" to, identification thereof, the courts thus recognizing and applying the principle that "that is certain which can be made certain." Wilt v. Waterfield, Mo., 273 S.W.2d 290, 294(4); Henleben v. Krause, Mo., 209 S.W.2d 888, 891(4). So it is that a contractual description of land by a familiar local appellation referring to a definite tract may be sufficient. Ray v. Wooster, supra, 270 S.W.2d loc. cit. 750; Byers v. Zuspan, supra, 241 Mo.App. loc. cit. 1113, 264 S.W. 2d loc. cit. 950.

■ But, *even if* there had been a meeting of the minds of the parties in this case, the trial court properly could not have found that a reference to "Vo's bldg" in the notation on plaintiff's check constituted a sufficient description of the real estate, included in the "package deal," to have satisfied the statute of frauds. For, it was incumbent upon defendant, who asserted satisfaction of the statute, to have established that such real estate was so generally and commonly known and recognized in Neosho by the name "Vo's bldg" that, when so described, it could have been identified and delineated readily and without dispute [Anderson v. Hall, Mo., 188 S.W. 79, 81–82; Shy v. Lewis, 321 Mo. 688, 697, 12 S.W.2d 719, 722]; and, on that subject, the record before us is completely silent and utterly barren. Compare Shy v. Lewis, supra, 321 Mo. loc. cit. 694–695, 697, 12 S.W.2d loc. cit. 721, 723(4).

Plaintiff's-respondent's motion to dismiss the appeal for failure of defendant's-appellant's brief to comply with Rule 83.05, V. A.M.R., is denied; defendant's-appellant's motion (subsequently filed) to amend her brief likewise is denied; and the judgment of the trial court is, in all respects, affirmed.

McDOWELL, J., concurs.

RUARK, J., not sitting.