Kenneth SEABAUGH,
Plaintiff-Respondent,

v.

Calvin SAILER and W.L. Voges, as co-executors of the Estate of Ervin A. Voges, Defendants-Appellants.

No. 47515.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Oct. 23, 1984.

J. Michael Payne, Cape Girardeau, for defendants-appellants.

John L. Oliver, Cape Girardeau, for plaintiff-respondent.

GAERTNER, Judge.

Appellants, co-executors of the Estate of Ervin A. Voges, appeal from a court order of specific performance of the sale of real estate.

Ervin Voges was a 75 year old bachelor who had for many years owned and lived upon a 185 acre farm. On several occasions, plaintiff, Kenneth Seabaugh, had expressed his interest in purchasing the farm as a residence. On March 12, 1981, Voges called plaintiff and asked if he was still interested in purchasing the property. They met the next day, toured the farm and plaintiff said he would buy it if he could afford it. When asked to make an offer, plaintiff refused telling Voges to state an asking price. Voges replied that he wanted $300.00 per acre and Seabaugh accepted. The agreement was sealed by a handshake. On the next day, March 14, 1981, plaintiff gave Voges $1,000.00 in cash and Voges signed a receipt which read: "Received from Kenneth E. Seabaugh $1,000.00 cash as down payment on farm. Balance will be $54,500.00." The following figures appeared at the bottom of the receipt:

$$
\begin{array}{r}
185 \\
\underline{300} \\
55500 \\
\underline{1000} \\
\$54500
\end{array}
$$

Later that same day Voges approached an attorney about writing a will. He brought with him a prepared list of designated charitable organizations and assured the attorney that he had sufficient cash to meet specific bequests because he had just sold his farm. The will was prepared and executed the following day. On March 17, 1981, Voges committed suicide. No mention of the farm is made in the will. In a separate action his heirs contested the will questioning Voges testamentary capacity. This action terminated in a judgment finding the will to be valid.

After the co-executors refused to convey the farm to plaintiff, he brought this action for specific performance. The trial court found in favor of plaintiff and ordered the conveyance. On appeal the co-executors argue that specific performance should not have been granted, contending the receipt is not a sufficient memorandum of the sale to satisfy the statute of frauds, that the consideration for the sale was inadequate, and that the terms of the purported agreement were not sufficiently definite to warrant specific performance.

■ On review of a court-tried case, the appellate court will sustain the order of the trial court unless there is no substantial evidence to support it, it is against the

weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The statute of frauds, § 432.010, RSMo. 1978, states that "no action shall be brought ... upon any contract for the sale of land ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith...." The only writing of the agreement between plaintiff and Voges is the receipt for the $1,000.00 signed by Voges.

■ A writing is sufficient to satisfy the statute of frauds if it sets forth the essential terms of the agreement including the parties, the subject matter, the consideration, the price and the promises upon both sides. *Ray v. Wooster*, 270 S.W.2d 743, 752 (Mo.1954). The receipt indicates that Voges and plaintiff are the parties, the price is $55,500.00 payable by a $1,000.00 down payment and a balance of $54,500.00. Appellants argue that the term "farm" is too indefinite and does not clearly indicate what real estate has been sold. It is important to note that the land in question was 185 undivided and fenced-in acres of farmland, timber and pasture land. It was the only land that Ervin Voges owned.

■ A writing sufficiently identifies the subject matter of a real estate sale if it provides the key to identification of the land. *Macy v. Day*, 346 S.W.2d 555, 559 (Mo.App.1961). As was noted in *Macy*, courts apply the principle of "that is certain which can be made certain." *Id.* To determine certainty, the written instruments, together with the attending circumstances, are considered. *Blankenship v. Porter*, 479 S.W.2d 409, 412–13 (Mo.1972). Voges could only convey that which he owned. "When a seller owns only one estate which answers the description given in a memorandum, it must be taken to be the estate to which the memorandum refers." *Ray v. Wooster*, 270 S.W.2d at 751. The only real estate Voges owned is the 185 acre farm in question. The computation of the sale price, 185 acres at $300.00 per

acre, refutes appellants' contention that he may have intended to sell only the tillable or the cleared portion of his acreage. The description here, viewed in the light of all the evidence, is sufficient to satisfy the statute of frauds and to distinguish this case from *Byers v. Zuspan*, 241 Mo.App. 1103, 264 S.W.2d 944 (1954) and *Shy v. Lewis*, 321 Mo. 688, 12 S.W.2d 719 (1928), relied upon by appellants.

■ The trial court not only found that the receipt satisfied the requirements of the statute of frauds, but also, in the alternative, that there was an oral contract to sell the farm enforceable under the exception to the statute of frauds relating to performance by the living party of an oral contract with a deceased party. *Cf. Bildner v. Giacoma*, 522 S.W.2d 83, 87 (Mo. App.1975). This case sets forth eight requirements, which must be establish by clear and convincing proof in order for the exception to be applied. Here, appellant urges us to find that two of the eight, that the oral contract be clear, explicit and definite and that the consideration be adequate and not unconscionable, are lacking. Because we have already found no error in the trial court's first finding, we need not address at length appellants' challenge to the alternative. What we have said above disposes of appellants' contention that the contract was incomplete and ambiguous. The basic elements of the agreement, the parties, the price, the subject matter, were not uncertain or indefinite. The agreement does not become ambiguous merely because the evidence is silent regarding the details of performance, such as the date of closing. *Ray v. Wooster*, 270 S.W.2d at 751–52. Proof of the existence and details of the contract were established by plaintiff's testimony and the receipt. Corroboration of the oral agreement is found in Voges' conversation with the scrivener of his will. When asked if he had sufficient funds to satisfy certain specific bequests, Voges replied the money would be available because he had just agreed to sell his farm. Voges confirmed the sale of the farm the night before he died when he

refused to rent a part of the farm to a neighbor, stating he had sold it to plaintiff. Such evidence supplies the "clear and convincing proof" required by *Bildner* and other cases.

■ As to the adequacy of the consideration, appellants' contention is based upon the testimony of two appraisers that the value of the land was $1300.00 to $1400.00 per acre. Overlooking the fact that this highly disputed testimony need not have been believed by the trial court, *McComas v. Umlauf,* 641 S.W.2d 809, 812 (Mo.App. 1982), inequality in value between the subject matter and the price, standing alone, does not rise to the level of unconscionability which requires the refusal of specific performance. *Miller v. Coffeen,* 365 Mo. 204, 280 S.W.2d 100, 103 (banc 1955). Adequacy of consideration is but a factor to be considered in the light of all the circumstances and unless accompanied by other inequitable incidents or unless the disparity is so gross as to show fraud, it will not mandate the denial of specific performance. *Id.* No such evidence appears here. Rather than the unconscionable overreaching on the part of a buyer which would preclude his entitlement to equitable enforcement of an unfair bargain, all of the evidence here points to a contrary conclusion. Having for years rejected offers from plaintiff and others to buy his farm, Voges initiated the discussion with plaintiff which led to the sale. Voges knew plaintiff wanted the land as a residence, not merely an investment, and that he would keep the property intact. Voges set the sale price which plaintiff accepted. Voges then arranged for the testamentary disposition of the proceeds of the sale, primarily to charitable organizations, and committed suicide. He left his recently executed will and the receipt for the sale of the farm side-by-side on the table in the room where he shot himself. The evidence here does not point to a "harsh, biting and oppressive contract" as did the "shockingly inadequate consideration" in *Miller,* 280 S.W.2d at 105, but rather, to a fulfillment of the desires of an elderly man suffering from physical in-

firmities that a friend of many years standing take over his home.

The findings of fact made by the trial court are amply supported by the evidence. Having no "firm belief that the decree or judgment is wrong," *Murphy v. Carron,* 536 S.W.2d at 32, we affirm.

CRIST, P.J., and STEPHAN, J., concur.